Kevin J. Harrington (KH-5027)
John T. A. Rosenthal (JR-4819)
HARRINGTON, OCKO & MONK, LLP
81 Main Street, Suite 215
White Plains, New York 10601
Telephone: (914) 686-4800
Facsimile: (914) 686-4824

*Attorneys for Plaintiff*
*SAS GROUP, INC.*



FILED

JUL 10 2008

USDC WP SDNY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CIV. 6267

JUDGE KARAS

| | |
|---|---|
| SAS GROUP, INC., a New York corporation, | x |
| Plaintiff, | x   Civil Action |
| | x |
| -against- | x   ECF Case |
| | x |
| LECTENT, LLC, a Washington limited liability corporation, and EDWARD Z. CAI, | x   **COMPLAINT** |
| | x   **JURY TRIAL DEMAND** |
| Defendants. | x |
| | x |

SAS GROUP, INC. ("SAS" or "Plaintiff"), by and through its attorneys, Harrington, Ocko & Monk, LLP, as and for its Complaint for injunctive and declaratory relief, and damages against LECTENT, LLC ("Lectent") and EDWARD Z. CAI ("Mr. Cai") (hereinafter collectively "Defendants"), for improperly threatening SAS and its customers with litigation based upon a pending, but as yet unissued patent application in the United States, tortious interference with business advantage and deceptive business practices, among other things, states as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. §§1331 and 1338, as this action is one arising under the Constitution and laws of the United States, and arises under the acts of Congress relating to trademarks, trade dress and unfair competition. Jurisdiction is

also appropriate in this Court pursuant to 28 U.S.C. §1332 as, upon information and belief, the parties are citizens of different states and the amount in controversy exceeds $75,000.

2.      This Court further has jurisdiction over this dispute and these parties pursuant to 28 U.S.C. §§2201(a), 2202 and CPLR §302 as, upon information and belief, there exists a ripe, justiciable controversy between Plaintiff and Defendants, and Defendants have transacted business with or in the State of New York, and Defendants have committed tortious acts outside of New York that have caused injury to SAS in New York. Defendant Cai, as an officer and/or owner of Defendant Lectent, has acted through Lectent regarding the conduct in this matter.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and Defendants have sufficient contact with this district to support the exercise of personal jurisdiction herein.

## THE PARTIES

4.      Plaintiff SAS is a New York corporation with its principal place of business at 220 White Plains Road, Tarrytown, New York in Westchester County. Plaintiff SAS is in the business of selling, marketing and distributing products, including homecare and kitchenware products. SAS sells and distributes kitchen products known by and marketed under the trademarks, "Chef Tony Smart Lidz" and "Smart Lidz", and the trade dress associated with these products, among other things.

5.      SAS is informed and believes and based thereon alleges that Defendant Lectent is a Washington limited liability corporation with its principal place of business located at 1101 N.E. 144th Street, Suite 107, Vancouver, Washington 98685. Upon information and belief, Edward Z. Cai is the President and/or CEO of Lectent.

2

6.    Upon information and belief, Lectent is in the business of marketing, selling and distributing kitchen products, including the products known as "Keepeez". Upon information and belief, Lectent has the right to use trademark "Keepeez", Registration No. 3393314, for container lids primarily made of rubber in International Class 017, and for non-metal containers for household use in International Class 021 which is owned by Household Technology Group, L.L.C.

7.    Edward Z. Cai is an individual who resides at 4607 SE Autumn Ct., Comas, Washington 98607.

8.    Upon information and belief, Mr. Cai, President and/or CEO of Lectent, is the alleged inventor of the claimed subject matter in U.S. Patent Application Publication No. US 2006/0032852A1 entitled "Airtight Lid For Container and Method of Use" which published on February 16, 2006. As of the date of this Complaint, the United States Patent and Trademark Office ("USPTO") has not issued a patent on this patent application, nor has the USPTO issued a Notice of Allowance for the subject matter of the patent application. It is uncertain whether the above-referenced patent application will ever mature into an issued patent.

9.    Upon information and belief, Mr. Cai, President and/or CEO of Lectent, is the alleged inventor of the claimed subject matter in U.S. Patent Application Publication No. US 2008/0041852A1 entitled "Vacuum Generating Device For Sealing Perishable Products and Method of Use" which published on February 21, 2008. As of the date of this Complaint, the USPTO has not issued a patent for this patent application. It is uncertain whether the above-referenced patent application will ever mature into an issued patent.

10.    Neither Mr. Cai nor Lectent is the owner of an issued patent covering its "Keepeez products" in the United States, Canada, Europe or any other foreign country. Upon

information and belief, neither Mr. Cai nor Lectent has applied for a patent in Canada relating to its "Keepeez" products.

## FACTUAL ALLEGATIONS

11.     Plaintiff SAS is in the business of selling, marketing and distributing homecare and kitchenware products throughout the United States and abroad.

12.     One of the kitchenware products marketed, distributed and sold by SAS is a product sold under the trademarks "Smart Lidz" and/or "Chef Tony's Smart Lidz". SAS is the owner of trademark application Serial No. 77/303,993 pending before the USPTO for the trademark "Smart Lidz" in International Class 021 for a set of universal lids for household use that cover bowls, containers and pots. The product marketed, distributed and sold by SAS under the "Smart Lidz" trademark consists of a system of reusable container lids that use a stretchable membrane which is pressed onto the lip of a reusable container to create an airtight seal thereby protecting food in the container from spoiling, among other things.

13.     SAS is the exclusive licensee to the trademark "Chef Tony's Smart Lidz", which is the subject of trademark application Serial No. 77/304,134 pending before the USPTO in International Class 020 for plastic lids, namely, universal container lids for household use.

14.     SAS markets, sells, advertises and distributes its "Smart Lidz" and "Chef Tony's Smart Lidz" kitchen products to various retail establishments throughout the United States, including in New York, and in Canada and Europe.

15.     Upon information and belief, Lectent markets and sells a vacuum food sealer product under the trademark, "Keepeez". Upon information and belief, Lectent claims that as a result of its marketing activities, the trademark and trade dress for its "Keepeez" vacuum food

sealer products are recognized by consumers nationally, including consumers in the State of New York.

16.     Lectent operates, or has authorized the operation of, a website whereby consumers, including consumers in the State of New York, can order "Keepeez" products by placing orders via e-mail and/or through the internet to Lectent, and have such orders for "Keepeez" products filled and sent to consumers at their residences or place of business, including consumers in the State of New York.

17.     Upon information and belief, Lectent has transacted business with consumers in the State of New York through or as a result of this interactive website, and has sold and/or shipped its "Keepeez" line of products to consumers in the State of New York.

18.     Upon information and belief, Lectent has transacted business with retail establishments which sell "Keepeez" products to consumers in New York, including consumers in the Southern District of New York.

19.     Upon information and belief, Mr. Cai has conducted business in New York, including but not limited to visiting customers and potential customers in New York.

## LECTENT IMPROPERLY THREATENED DISTRIBUTORS
## AND CUSTOMERS OF SAS WITH LEGAL ACTION

20.     In or about April 2008, authorized representatives and/or agents of Lectent, under the direction of Mr. Cai, approached and/or communicated with various customers, accounts and potential customers and accounts of SAS, including but not limited to, Bartell Drugs, Walgreens, Bed Bath & Beyond, Target, Walmart, Kohl's, and others, regarding SAS's "Smart Lidz" products and Lectent's "Keepeez" products.

21.     The retailers listed in Paragraph 18 operate hundreds of retail outlets in New York and Washington State, as well as other states, and sell products to hundreds of thousands of

consumers in New York, and other states. SAS has ongoing business relationships with many of these retailers, and sells and markets products to and through these retailers.

22.     Upon information and belief, during discussions with these various customers and/or accounts of SAS, Lectent's authorized agents and/or representatives stated to these accounts and customers that Lectent has an issued patent covering its Keepeez products and that SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" products infringe upon such patent. Upon information and belief, Lectent's authorized representatives and/or agents made the distinct impression upon these customers and accounts of SAS that Lectent intended to bring legal action against SAS for alleged infringement by SAS of Lectent's patents, which patents do not exist. Upon information and belief, Lectent's authorized agents and/or representatives, through statements, gave the impression to these accounts and customers that they would also be subject to legal action by Lectent if these accounts and customers purchased and sold SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" products.

23.     Upon information and belief, as part of its improper course of conduct, including threats of infringement and legal action against SAS and its accounts and customers regarding supposed patent rights for the "Keepeez" product and associated trademark and trade dress, Lectent's authorized agents and/or representatives, at the direction of Mr. Cai, showed customers and/or accounts of SAS a letter Lectent claimed to have sent to SAS in April 2008 regarding the "Keepeez" product and the "Smart Lidz" product. Upon information and belief, Lectent and/or its authorized agents or representatives asserted that the letter contained allegations of patent infringement by SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" products. No such letter was ever sent by Lectent or its counsel to SAS in April of 2008, or anytime prior to April 2008. A copy of the April 2008 letter is attached as Exhibit A.

24.    Upon information and belief, through discussions with SAS, Bartell Drugs expressed an intent to purchase SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" products. Bartell Drugs had purchased products from SAS in the past thus establishing a prior business relationship with SAS. Upon information and belief, both Mr. Cai and Lectent were aware of the business relationship between SAS and Bartell Drugs and the imminent sale of SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" products to Bartell Drugs.

25.    Upon information and belief, as a result of the threats of Lectent and/or its authorized agents and/or representatives with regard to potential claims and/or infringement actions against SAS and/or its customers and/or accounts, Bartell Drugs did not purchase "Smart Lidz" and/or "Chef Tony's Smart Lidz" products from SAS, but instead, purchased "Keepeez" products from Lectent. As a result of the improper conduct of Mr. Cai, Lectent and/or its authorized agents and/or representatives interfering with SAS's business relationship with Bartell Drugs, SAS lost the sales and revenues associated with Bartell Drugs purchasing SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" products.

26.    Upon information and belief, at the direction of Mr. Cai, authorized agents and/or representatives of Lectent also communicated with potential customers and/or accounts of SAS and/or SAS's authorized distributors of "Smart Lidz" in Canada regarding Lectent's "Keepeez" product and purported intellectual property rights in that product. Upon information and belief, Lectent's authorized agents and/or representatives indicated to potential customers and/or accounts of SAS in Canada that Lectent held valid and enforceable patent rights in Canada and elsewhere for the technology involved in Lectent's "Keepeez" product. Upon information and belief, Lectent and/or its authorized agents and/or representatives made the statements regarding these valid and enforceable patent rights and possible infringement to Canadian distributor, TV

Supertek, Canada, Inc., and Canadian retail chain Canadian Tire.   Supertek is a distributor and customer of SAS in Canada.   Upon information and belief, Canadian Tire is the largest retail chain in Canada, and nine (9) out of every ten (10) Canadian adults shop at a Canadian Tire store at least twice a year.

27.   Upon information and belief, Lectent's authorized agents and/or representatives represented to these distributors, accounts and/or potential customers of SAS that SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" products infringed Lectent's intellectual property rights for its "Keepeez" products, including Lectent's asserted Canadian patent rights.  Neither Lectent nor Mr. Cai have an issued patent or even a patent application pending in Canada regarding its "Keepeez" product, or the technology, know-how or intellectual property associated with that product.

28.   Upon information and belief, Lectent's authorized agents and/or representatives made representations and/or left the impression with distributors and/or potential customers and/or accounts of SAS that Lectent intended on bringing legal action against SAS for alleged infringement of Lectent's intellectual property rights in the United States and Canada regarding its "Keepeez" products, and that Lectent might bring claims and/or lawsuits against these distributors, potential customers and/or accounts of SAS should these accounts and/or potential customers purchase SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" products, as opposed to purchasing Lectent's "Keepeez" products.

29.   Upon information and belief, due to the threats of infringement and suit by Lectent's authorized agents and/or representatives regarding the "Keepeez" and "Smart Lidz" products, SAS and/or its distributors in Canada have been unable to sell tens of thousands of

units of its "Smart Lidz" products to retail accounts in Canada, including Canadian Tire, thereby losing hundreds of thousands of dollars in revenues and profits.

30.    Upon information and belief, at the direction of Mr. Cai, authorized agents and/or representatives of Lectent communicated with potential customers, accounts, and/or authorized distributors of "Smart Lidz" in Europe regarding Lectent's "Keepeez" product and purported intellectual property rights in that product.  Upon information and belief, Lectent's authorized agents and/or representatives indicated to potential customers and/or accounts of SAS in Europe that Lectent held valid and enforceable patent rights in Europe and elsewhere for the technology involved in Lectent's "Keepeez" product.

31.    Upon information and belief, Lectent's authorized agents and/or representatives represented to such distributors, accounts and/or potential customers of SAS that SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" products infringed Lectent's intellectual property rights for its "Keepeez" products, including Lectent's asserted European patent rights.  Neither Lectent nor Mr. Cai have an issued patent regarding the "Keepeez" product or the technology, know-how or intellectual property associated with that product in the United States, Europe or elsewhere.

32.    Upon information and belief, due to the threats of infringement and suit by Lectent's authorized agents and/or representatives regarding the "Keepeez" and "Smart Lidz" products, SAS and/or its distributors in Europe have been unable to sell tens of thousands of units of its "Smart Lidz" products to retail accounts and/or distributors in Europe, thereby losing hundreds of thousands of dollars in revenue and profits.

## LECTENT IMPROPERLY THREATENED SAS WITH LEGAL ACTION

33.    In or about May 2008, counsel for Lectent sent a cease and desist letter to SAS threatening litigation unless SAS complied with Lectent's demands to stop marketing SAS's

"Smart Lidz" kitchen products. Counsel for Lectent asserted and/or implied in this letter that "Smart Lidz" trade dress and/or trademark infringed upon Lectent's trademark and trade dress rights for its "Keepeez" products, or SAS's activities constituted false advertising in violation of the Lanham Act. The letter contains no description of how SAS's "Smart Lidz" trademark or trade dress infringe upon Lectent's "Keepeez" mark or trade dress, or how SAS's conduct violates the Lanham Act. A copy of the letter is attached as Exhibit B.

34.    This cease and desist letter by Lectent counsel acknowledged that Lectent has no valid and enforceable patent rights for its "Keepeez" product, either in the United States or elsewhere.

## AS AND FOR A FIRST CAUSE OF ACTION
## DECLARATORY RELIEF

35.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "34", inclusive of this Complaint, as if fully set forth herein.

36.    SAS markets a kitchen product under the trademarks "Smart Lidz" and/or "Chef Tony's Smart Lidz", as well as the associated trade dress for its "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen products.

37.    Upon information and belief, Lectent markets, sells and distributes a line of kitchen products utilizing the trademark "Keepeez", and trade dress associated with such products.

38.    Upon information and belief, Lectent has threatened litigation against SAS regarding the "Smart Lidz" and/or "Chef Tony's Smart Lidz" trademarks, as well as the trade dress associated with the "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen products, and false advertising, among other things, for alleged violations by SAS of the Lanham Act.

39.    Upon information and belief, at the direction of Mr. Cai, Lectent has also threatened litigation against customers and accounts of SAS, as well as potential customers and accounts of SAS, regarding the "Smart Lidz" and/or "Chef Tony's Smart Lidz" products. Upon information and belief, Lectent has represented to such customers and accounts that SAS's "Smart Lidz" products infringe upon alleged patent and other intellectual property rights claimed by Lectent regarding its "Keepeez" product.

40.    Lectent has no patent in the United States, Canada or Europe relating to its "Keepeez" product or the technology associated with such product.

41.    An actual controversy has arisen and now exists between SAS and Defendants Lectent and Mr. Cai with respect to the trademark, trade dress and associated intellectual property of SAS relating to its kitchen products sold and marketed using the trademarks "Smart Lidz" and "Chef Tony's Smart Lidz" and associated trade dress, on the one hand, and Lectent regarding the trademark and trade dress and other intellectual property associated with its "Keepeez" products, among other things.

42.    Upon information and belief, Defendants Mr. Cai and Lectent assert and maintain that the purported trademark, trade dress and other intellectual property rights for its "Keepeez" kitchen products are being infringed by SAS regarding its "Smart Lidz" and "Chef Tony's Smart Lidz" products, and/or SAS's conduct violates the Lanham Act.

43.    Upon information and belief, at the direction of Mr. Cai, Lectent has instructed its counsel to send a letter to SAS threatening litigation against SAS with regard to the marketing by SAS of its kitchen products using the trademarks, trade dress and other intellectual property associated with its "Smart Lidz" and "Chef Tony's Smart Lidz" line of kitchen products.

44.    A judicial determination pursuant to 28 U.S.C. §§2201(a) and 2202 is necessary and appropriate at this time in order that SAS may ascertain its rights and duties with respect to its trademarks and trade dress for its "Smart Lidz" and/or "Chef Tony's Smart Lidz" products, on the one hand, and the purported trademark and trade dress of Defendant Lectent for its "Keepeez" product as to which Lectent has alleged infringement and/or false advertising, and threatened to bring suit against SAS in connection with such dispute.

45.    SAS is entitled to a determination under 28 U.S.C. §§2201(a) and 2202, that the trademark, trade dress and other intellectual property rights associated with SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" kitchen products do not infringe Lectent's purported trademark, trade dress, and other intellectual property rights associated with Lectent's "Keepeez" line of kitchen products, and SAS is not in violation of the Lanham Act with respect to Lectent and its "Keepeez" product.

## AS AND FOR A SECOND CAUSE OF ACTION
## FALSE ADVERTISING – UNFAIR BUSINESS PRACTICES
## UNDER THE LANHAM ACT

46.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "45", inclusive of this Complaint, as if fully set forth herein.

47.    SAS markets its "Smart Lidz" and/or "Chef Tony's Smart Lidz" products to various retail establishments and/or distributors in the United States, Canada and Europe.  SAS has accounts, contracts and/or business relationships with these various distributors, accounts and customers to sell, market and/or distribute goods of SAS, including kitchen products like "Smart Lidz" and/or "Chef Tony's Smart Lidz", among other things.

48.    Upon information and belief, at the direction of Mr. Cai, authorized agents and/or representatives of Lectent approached various retailers, distributors, customers and/or accounts,

some of whom purchase kitchen goods and/or products from SAS or its distributors, in order to induce such retailers, customers, accounts and/or distributors to purchase and/or market and distribute Lectent's "Keepeez" products, and not "Smart Lidz".

49.    Upon information and belief, and at the direction of Mr. Cai, authorized agents and/or representatives of Lectent asserted that Lectent has intellectual property and patent rights in the United States, Canada and Europe regarding its "Keepeez" line of kitchen products.  Upon information and belief, these authorized agents and/or representatives of Lectent also asserted that SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" kitchen products infringe upon Lectent's intellectual property rights, including supposed patent rights relating to the "Keepeez" product.

50.    Neither Mr. Cai nor Lectent have a patent in the United States, Canada or Europe covering its "Keepeez" product or the technology associated with the "Keepeez" line of kitchen products.  Rather, upon information and belief, Lectent's President, Mr. Cai, has two patent applications pending, which patent applications have not been approved or issued by the United States Patent Office, and may never be approved or issued, particularly in view of the substantial prior art which exists and which clearly demonstrates the invention has been in the public domain.

51.    Despite knowledge that it has no patents in the United States, Canada or Europe for its "Keepeez" line of products and/or technology, upon information and belief, at the direction of Mr. Cai, Lectent and/or its authorized agents and/or representatives have routinely asserted to distributors, clients and accounts of SAS that SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen products infringe Lectent's intellectual property rights, and Lectent's alleged patents with regard to its "Keepeez" line of products.

13

52.    Upon information and belief, and at the direction of Mr. Cai, Lectent and/or its authorized agents and/or representatives knew or should have known that no patent has been issued by the USPTO, the Canadian Patent Office, or the European Patent Office with respect to the "Keepeez" line of products or the technology associated with Lectent's "Keepeez" line of products.  Upon information and belief, despite knowing that Lectent has no patent with regard to its "Keepeez" line of products and technology associated with those products, at the direction of Mr. Cai, Lectent and/or its authorized agents and/or representatives have routinely, and improperly, asserted to accounts, customers and/or distributors of SAS that Lectent has patent rights in the United States, Canada and Europe with regard to its "Keepeez" line of products.

53.    Upon information and belief, as a result of the improper, intentional and/or wrongful assertions and threats of litigation and/or infringement by Lectent and/or its authorized agents and/or representatives, with regard to alleged patent rights for Lectent's "Keepeez" line of kitchen products and/or the technology associated with those products, SAS has lost business and/or customers and/or accounts and has been damaged as a result.

54.    Upon information and belief, damages incurred by SAS include lost revenues and/or profits which SAS would have obtained from distributors, customers and/or accounts through the sale and/or distribution of SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of products to distributors, customers and/or accounts, but for the intentional, wrongful and malicious conduct and statements of Lectent and/or Lectent's authorized agents and/or representatives through a course of conduct of threats of infringement, litigation and intimidation.

55.    Upon information and belief, SAS has suffered damages as a result of Defendant's wrongful conduct in an amount to be determined at trial, including but not limited to, lost revenues and attorneys' fees and costs.

## AS AND FOR A THIRD CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

56.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "55", inclusive of this Complaint, as if fully set forth herein.

57.    SAS markets its "Smart Lidz" and/or "Chef Tony's Smart Lidz" products to various retail establishments and/or distributors in the United States, Canada and Europe, including but not limited to, Bartells Drugs, Walgreens, Bed, Bath & Beyond, Target, J.C. Penney's, Walmart, Kohl's and Canadian Tire.  SAS has accounts, contracts and/or business relationships with these various distributors, accounts and customers to sell, market and/or distribute goods of SAS, including kitchen products like "Smart Lidz" and/or "Chef Tony's Smart Lidz", among other things.  Defendants, Mr. Cai and Lectent were aware of these business relationships between SAS and its customers.

58.    Upon information and belief, at the direction of Mr. Cai, authorized agents and/or representatives of Lectent approached these various retailers, distributors, customers and accounts, some of whom purchase kitchen goods and products from SAS or its distributors, in order to induce such retailers, customers, accounts and/or distributors to purchase and/or market and distribute Lectent's "Keepeez" kitchen products, and discontinue selling "Smart Lidz".

59.    Upon information and belief, at the direction of Mr. Cai, authorized agents and/or representatives of Lectent asserted that Lectent has intellectual property and patent rights in the United States, Canada and Europe regarding its "Keepeez" line of kitchen products.  Upon information and belief, these authorized agents and/or representatives of Lectent also asserted

that SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" kitchen products infringe upon Lectent's intellectual property rights, including supposed patent rights relating to the "Keepeez" products.

60.     Neither Mr. Cai nor Lectent have a patent in the United States, Canada or Europe covering its "Keepeez" product, or the technology associated with the "Keepeez" line of kitchen products. Rather, upon information and belief, Lectent's President, Mr. Cai, has two (2) patent applications pending, patent application Serial No. 10/0917,016 and patent application Serial No. 11/499,280. The USPTO has not yet issued patents for either of these patent applications and may never issue any such patents, particularly in view of the substantial prior art which exists and which clearly demonstrates the invention as being in the public domain.

61.     Lectent presently has no valid and issued patent and has not applied for patent protection with regard to its "Keepeez" products in Canada.

62.     Lectent has applied for patents in Europe, but has not obtained a valid and enforceable patent with regard to its "Keepeez" line of products and technology in Europe and the European Patent Office may never issue any such patents.

63.     Despite knowledge that it has no patents in the United States, Canada or Europe for its "Keepeez" line of products and/or technology, at the direction of Mr. Cai, Lectent and/or its authorized agents and/or representatives have routinely asserted to distributors, clients and accounts of SAS that SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" infringe Lectent's intellectual property rights and Lectent's alleged patents with regard to its "Keepeez" line of products.

64.     Mr. Cai, Lectent and/or its authorized agents and/or representatives knew or should have known that no patent has been issued by the USPTO, the Canadian Patent Office, or

European Patent Office with respect to the "Keepeez" line of products or the technology associated with Lectent's "Keepeez" line of products. Upon information and belief, despite knowing that Lectent has no patent with regard to its "Keepeez" line of products and technology associated with those products, at the direction of Mr. Cai, Lectent and/or its agents and/or representatives have routinely, and improperly asserted to accounts, customers and distributors of SAS that Lectent has patent rights in the United States, Canada and Europe with regard to its "Keepeez" line of products.

65.    Certain of SAS's customers and/or accounts and/or potential customers and/or accounts have refrained from, and/or refused to purchase and/or enter into purchasing agreements with SAS or its distributors with respect to its "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen goods. Upon information and belief, these accounts and/or customers, and/or potential accounts and/or customers of SAS decided not to purchase "Smart Lidz" and/or "Chef Tony's Smart Lidz" kitchen products from SAS as a result of knowingly improper threats of litigation and/or infringement by Lectent and/or its authorized agents and/or representatives, at the direct of Mr. Cai..

66.    As the result of the improper, intentional and/or wrongful assertions and threats of litigation and/or infringement by Lectent and/or its authorized agents and/or representatives, with regard to alleged patent rights for Lectent's "Keepeez" line of kitchen products and/or the technology associated with those products, SAS has lost business and/or customers and accounts, and has been damaged as a result.

67.    As a result of the threats of litigation and/or infringement made by Lectent and/or its authorized agents and/or representatives, SAS has lost the sales of tens, if not hundreds of

thousands of units of its "Smart Lidz" products and has lost profits well in excess of one hundred thousand dollars.

68.　　Damages incurred by SAS include lost revenues and/or profits which SAS would have obtained from distributors, customers and/or accounts through the sale and/or distribution of SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen products to those distributors, customers and/or accounts, but for the intentional, wrongful and malicious conduct of Lectent and/or Lectent's authorized agents and/or representatives through a course of conduct of threats of infringement, litigation and intimidation.

69.　　SAS has suffered damages as a result of Defendants' wrongful conduct in an amount to be determined at trial, including but not limited to, lost revenues and attorneys' fees and costs.

## AS AND FOR A FOURTH CAUSE OF ACTION
## PRIMA FACIE TORT

70.　　Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "69", inclusive of this Complaint, as if fully set forth herein.

71.　　SAS markets a kitchen product under the trademark "Smart Lidz" and/or "Chef Tony's Smart Lidz", as well as the associated trade dress for its "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen products.

72.　　Lectent markets, sells and distributes a line of kitchen products utilizing the trademark "Keepeez", and trade dress associated with such products.

73.　　Upon information and belief, neither Mr. Cai nor Lectent have a valid and enforceable patent in the United States, Canada or Europe covering its "Keepeez" line of products and/or the technology associated with its "Keepeez" line of products.

74.    Upon information and belief, Lectent, and/or its President, Mr. Cai, presently has two (2) patent applications pending before the USPTO with respect to the technology associated with Lectent's "Keepeez" line of kitchen products. As of the date of this Complaint, the USPTO has not granted a patent with respect to these two (2) patent applications and may never issue a patent.

75.    Upon information and belief, Lectent has no issued patents or patent applications pending in Canada covering its "Keepeez" line of kitchen products or the technology associated with Lectent's "Keepeez" products.

76.    Upon information and belief, Lectent has patents pending before the European Patent Office, but no European patent has been issued covering Lectent's "Keepeez" line of products or the technology associated with those lines of products. Upon information and belief, any patent to be issued by the European Patent Institution for Lectent's "Keepeez" line of products and the European Patent Office may never issue any such patents.

77.    At the direction of Mr. Cai, Lectent and/or its authorized agents and/or representatives have made statements to distributors, customers, accounts, potential customers and potential accounts of SAS and/or SAS's distributors that Lectent has patents for its "Keepeez" line of kitchen products, and that SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen products infringe upon Lectent's patents.

78.    Mr. Cai, Lectent and/or its authorized agents and/or representatives knew or should have known that such statements to these customers, accounts and/or distributors of SAS were false, as Lectent has no patent in the United States, Canada or Europe covering its "Keepeez" line of products, or the technology associated with its "Keepeez" line of products.

79.    Distributors, customers and/or accounts and/or potential customers and/or accounts of SAS's refrained from and did not purchase or agree to purchase SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen products as a result of the threats of litigation, potential litigation and/or infringement made by Lectent and/or its authorized agents and/or representatives.

80.    As a result of the false assertions by Lectent and/or its authorized agents and/or representatives that Lectent has patents covering its "Keepeez" line of products and the technology associated with the "Keepeez" line of kitchen products, and that SAS's "Smart Lidz" products infringe such patents, SAS has been damaged and its business reputation tarnished through the false statements made by Lectent and/or its authorized agents and/or representative to SAS's distributors, accounts, customers and/or potential accounts and customers.

81.    SAS's diminished and tarnished business reputation will not be refurbished, reinstated and/or cleansed through obtaining money damages against Lectent.  Rather, upon information and belief, the tarnished, diminished and damaged business reputation of SAS that has resulted from the false and improper statements of Lectent and/or its authorized agents or representatives regarding alleged infringement by SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen products constitute special damages which cannot be properly or fully remedied by recovering money damages from the Defendants.

82.    Damages incurred by SAS as a result of the improper conduct by Mr. Cai, Lectent and/or its authorized agents and/or representatives constitute special damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
## VIOLATION OF GBL §349

83.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "82", inclusive of this Complaint, as if fully set forth herein.

84.    Defendant's actions described herein in this Complaint constitute deceptive acts and practices in the conduct of business, substantially affecting trade or commerce in New York in violation of General Business Law §349.

85.    The actions of Mr. Cai, Lectent and/or its authorized agents and/or representatives in falsely claiming patent rights with regard to its Keepeez" line of kitchen products resulted in certain distributors, customers and/or accounts of SAS not to purchase and/or distribute SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen products.

86.    Upon information and belief, Lectent's "Keepeez" line of products sells at a considerably higher price than the comparable "Smart Lidz" and/or "Chef Tony's Smart Lidz" products sold, marketed and distributed by SAS.

87.    As a result of the improper and deceptive actions of Mr. Cai, Lectent and/or its authorized agents and/or representatives described above, distributors, retailers and consumers who would otherwise have been able to choose between Defendant's "Keepeez" line of kitchen products and SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen products were precluded from making that choice.

88.    The improper and deceptive acts and/or practices of Mr. Cai, Lectent and/or its authorized agents and/or representatives have had a broad and negative impact on consumers at large, and have impacted distributors, retailers and consumers, including retailers and consumers who sell and/or purchase products in New York State, by reducing retailer and consumer choice among competing kitchen products with different price points.

89.    As a result of Defendants' improper and illegal acts, SAS has been damaged in an amount to be determined at trial in this matter.

90.    Pursuant to GBL §349, as a result of Defendants' willful and intentional acts of deceptive and unfair business practices, SAS is entitled to exemplary damages, as well as attorneys' fees.

## AS AND FOR A SIXTH CAUSE OF ACTION
## CIVIL CONSPIRACY

91.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "90", inclusive of this Complaint, as if fully set forth herein.

92.    Upon information and belief, Defendants Mr. Cai, Lectent and/or its agents and/or representatives combined, conspired and/or agreed to threaten distributors, customers and/or accounts of SAS with patent infringement and/or litigation relating to SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of products.

93.    Mr. Cai, Lectent and/or its authorized agents and/or representatives knew or should have known that Lectent has no patent rights in the United States, Canada or Europe regarding and/or relating to Lectent's "Keepeez" line of kitchen products.

94.    Mr. Cai, Lectent and/or its authorized agents and/or representatives made threats of infringement and/or litigation against distributors, customers and/or accounts or potential customers and/or accounts of SAS in order to induce those customers and/or accounts not to buy SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen products, and instead, to purchase Lectent's "Keepeez" line of kitchen products.

95.    Mr. Cai, Lectent and/or its authorized agents and/or representatives made these threats of infringement and/or litigation knowing that Lectent has no patent or patent rights in the United States, Canada or Europe with regard to its "Keepeez" line of products.

96.    At the direction of Mr. Cai, Lectent and/or its authorized agents and/or representatives entered into an agreement to conspire to prevent SAS from selling its "Smart

Lidz" and/or "Chef Tony's Smart Lidz" line of products to various distributors, customers and/or accounts in order to damage SAS and/or tarnish SAS's business reputation, and to obtain sales of Lectent's "Keepeez" line of kitchen products to these same distributors, customers and/or accounts.

97.    As a result of Defendants' actions, including Lectent and/or its authorized agents and/or representatives' agreement and/or conspiracy to accomplish an unlawful purpose, SAS has been damaged in an amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT

98.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "97", inclusive of this Complaint, as if fully set forth herein.

99.    The actions of Mr. Cai, Lectent and/or its authorized agents and/or representatives described herein constitute unfair and/or deceptive business acts or practices under Washington's Consumer Protection Act.

100.    The conduct of Mr. Cai, Lectent and/or its authorized agents and/or representatives in making false and/or deceptive statements to distributors and/or customers and/or accounts of SAS regarding alleged patent rights in Lectent's "Keepeez" line of products occurred in trade or commerce.

101.    The false and/or misleading statements made by Mr. Cai, Lectent and/or its authorized agents and/or representatives regarding alleged patent rights in its "Keepeez" line of products induced customers and/or accounts and/or potential customers and/or accounts of SAS not to purchase SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of comparable kitchen products, thereby precluding consumers from having a choice of kitchen products at varying prices.

102.    Such conduct and practices by Mr. Cai, Lectent and/or its authorized agents and/or representatives impacted the public interest in a detrimental and negative manner by precluding the public from having a choice between competing kitchen products at apparently different prices.

103.    SAS has suffered injury to its business through the false and/or deceptive statements made by Lectent and/or its authorized agents and/or representatives regarding alleged patent rights in Lectent's "Keepeez" line of products, by inducing customers, distributors and/or accounts of SAS not to purchase SAS's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of products.

104.    SAS has been damaged by the improper conduct of Defendants in an amount to be determined at trial.

105.    As a result of the improper conduct of Defendants and/or its authorized agents and/or representatives, SAS is entitled to attorneys' fees and costs incurred in bringing this action.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## INJUNCTIVE RELIEF

106.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "105", inclusive of this Complaint, as if fully set forth herein.

107.    As a result of the improper acts of Mr. Cai, Lectent and/or its authorized agents and/or representatives, including statements by Defendant and/or its authorized agents and/or representatives to customers, distributors and/or accounts of SAS, that Defendants have patent rights in the United States, Canada and Europe with respect to its "Keepeez" line of kitchen products, which statements are knowingly false at the time they were made, and that SAS's

"Smart Lidz" products infringe such patents, SAS has and will continue to suffer irreparable harm to its business reputation with its customers, distributors and/or accounts.

108.    SAS has adequately demonstrated that it will likely succeed on the merits of its claims against Defendants as, upon information and belief, Defendants and/or its authorized agents and/or representatives have made false and improper statements of patent rights with regard to its "Keepeez" line of products knowing that neither Lectent nor Mr. Cai, have issued patents in the United States, Canada or Europe with regard to the "Keepeez" line of products.

109.    As a result, SAS is entitled to injunctive relief precluding and enjoining Defendants from engaging in the following course of conduct:

A.    Defendants and its authorized agents and/or representatives may not make statements and/or communicate to Plaintiff's distributors, customers, accounts or potential distributors, customers or accounts that Defendants have a patent or patent rights with regard to its "Keepeez" line of products; and

B.    Defendants and its authorized agents and/or representatives are enjoined from making statements and/or communicating with Plaintiff's distributors, customers or accounts and/or potential distributors, customers and accounts that Plaintiff's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of kitchen products infringe upon Defendants' non-existent patents or patent rights relating to its "Keepeez" line of products.

**WHEREFORE,** Plaintiff SAS prays for the following judicial relief:

A.    On Plaintiff's First Cause of Action, a declaration by this Court that it has not committed false advertising and that the purported trademark and trade dress of Lectent's "Keepeez" line of kitchen products are not infringed by SAS, are invalid and/or are not

enforceable as against SAS and its kitchen products, including but not limited to, the SAS trademarks "Smart Lidz and "Chef Tony's Smart Lidz", as well as the trade dress and other intellectual property associated with Plaintiff's line of "Smart Lidz" and/or "Chef Tony's Smart Lidz" kitchen products marketed, sold and distributed by SAS;

     B.    On Plaintiff's Second Cause of Action, money damages in an amount to be determined at trial, as well as injunctive relief, plus attorneys' fees and costs for this action;

     C.    On Plaintiff's Third Cause of Action, money damages in an amount to be determined at trial, as well as injunctive relief, plus attorneys' fees and costs for this action;

     D.    On Plaintiff's Third Cause of Action, money damages in an amount to be determined at trial, as well as injunctive relief, plus attorneys' fees and costs for this action;

     E.    On Plaintiff's Fourth Cause of Action, money damages in an amount to be determined at trial, as well as injunctive relief, plus attorneys' fees and costs for this action;

     F.    On Plaintiff's Fifth Cause of Action, money damages in an amount to be determined at trial, as well as injunctive relief, plus attorneys' fees and costs for this action;

     G.    On Plaintiff's Sixth Cause of Action, money damages in an amount to be determined at trial, as well as injunctive relief, plus attorneys' fees and costs for this action;

     H.    On Plaintiff's Seventh Cause of Action, injunctive relief precluding Defendants and its agents and/or representatives from making statements and/or communicating to Plaintiff's distributors, customers, accounts and/or potential distributors, customers or accounts that Defendants have a patent or patent rights with regard to its "Keepeez" line of products, and Defendants and its agents and/or representatives are enjoined from making statements and/or communicating to Plaintiff's distributors, customers, accounts and/or potential distributors, customers and accounts that Plaintiff's "Smart Lidz" and/or "Chef Tony's Smart Lidz" line of

kitchen products infringe upon Defendants' pending patents or patent rights relating to Defendant's "Keepeez" line of products, plus attorneys' fees and costs for this action;

I.  That this action be declared exceptional, and that SAS be awarded its attorney's fees and costs pursuant to 15 U.S.C. §1117(a);

J.  That SAS be awarded its costs and expenses incurred in this declaratory action; and

K.  For such other and further relief as the Court deems just and proper.

Dated: White Plains, New York
       July 9, 2008

                                        Yours, etc.,

                                        Kevin J. Harrington (KH-5027)
                                        John T. A. Rosenthal (JR-4819)
                                        HARRINGTON, OCKO & MONK, LLP
                                        *Attorneys for Plaintiff*
                                        *SAS GROUP, INC.*
                                        81 Main Street, Suite 215
                                        White Plains, New York 10601
                                        Telephone:  (914) 686-4800
                                        Facsimile:  (914) 686-4824

TO:  Lectent, LLC
     1101 N.E. 144th Street
     Suite 107
     Vancouver, Washington 98685

     Edward Z. Cai
     4607 SE Autumn Ct.
     Comas, Washington 98607

**EXHIBIT "A"**

Postal Signature                                    3

*Ken Paige*

# VENABLE LLP

525 7th Street, NW
Washington, DC 20004-1601

Telephone 202-344-4000
Facsimile 202-344-8300

www.venable.com

Roger A. Colaizzi                    202-344-8383                    racolaizzi@venable.com

April 23, 2008

Michael Sobo, President
SAS Group, Inc.
200 White Plains Road
Tarrytown, New York 10591

Dear Mr. Sobo:

We represent Lectent L.L.C. ("Lectent") of Vancouver, Washington for protecting its intellectual property rights on Keepeez® products. Our client has two U.S. patent applications, two corresponding PCT applications, and many foreign applications by its principal, Dr. Edward Z. Cai. The two U.S. patent applications are:

1.    Patent Application Serial No. 10/0917,016 published February 16, 2006, Publication No. US2006/0032852 A1; and

2.    Patent Application Serial No. 11/499,280 published February 21, 2008, Publication No. US2008/0041852 A1.

Copies of these applications are enclosed. Section 154(d) of the U.S. Code-Patents gives our client the right to obtain a royalty from any person who, after publication of these patents and with actual notice of the published applications, makes, uses, offers for sale, or sells in the U.S., or imports into the U.S., an invention as claimed in the published patent application, if the invention as claimed in the resulting patent is substantially identical to the invention claimed in the published application. See 35 U.S.C. § 154(d). We expect the first patent to be issued in several months.

As you can see, the SMART LIDZ product falls within the published claims of the enclosed applications.

Please be advised that our client intends to pursue all possible remedies and take all necessary action to protect their intellectual property. This action would include seeking damages caused by the manufacture, advertisement, distribution, offer to sell, and sale of any products infringing issued patents, including with respect to provisional rights. Indeed, in addition to claims for patent infringement, our client would seek all other available causes of action, which may include false advertising claims under the Lanham Act.

Very truly yours,

Roger A. Colaizzi

Enclosures

US 20060032852A1

(19) **United States**
(12) **Patent Application Publication** (10) Pub. No.: US 2006/0032852 A1
     Cai                                     (43) Pub. Date:        Feb. 16, 2006

(54) AIRTIGHT LID FOR CONTAINER AND METHOD OF USE

(76) Inventor:  Edward Z. Cai, Camas, WA (US)

Correspondence Address:
Edward Z. Cai
4607 SE Autumn CT
Camas, WA 98607 (US)

(21) Appl. No.:    10/917,016

(22) Filed:       Aug. 12, 2004

          Publication Classification

(51) Int. Cl.
     B65D  51/16        (2006.01)
     B65D  51/00        (2006.01)
(52) U.S. Cl. ............ 220/287; 220/367.1; 220/231;
                                              220/804

(57)                 ABSTRACT

A lid for forming an airtight seal to a bowl or dish plate to conserve the lot of product therein comprises an impermeable membrane having an outer perimeter larger than the rim of the container and an enforcement ring for enabling the formation of an airtight seal between the membrane and rim of the container under vacuum. The membrane is sufficiently soft to cause it to fill the lower sections or imperfections on the rim, thus enabling the lid to form an airtight seal to almost all household containers. The membrane may be adapted to have sufficient low tensile stress, thereby preventing the vacuum in the container from imploding or collapsing the container even if it has a thin or weak wall. The enforcement ring has vertical and horizontal rings connected to the membrane perimeter to prevent the membrane deformation at both vertical and horizontal directions. The lid may further comprise an air evacuation passageway having an air collection chamber for extracting air from the container and a valve for allowing air to flow out of the container but preventing air from entering. In use, the lid may be sealed to a container by simply pushing the membrane into the container and releasing the membrane to generate a vacuum to affix the membrane to the container, or may be sealed to a container by connecting a vacuum generator to the evacuation passageway to evacuate the container.



US 20080041852A1

# United States
# Patent Application Publication
Cai

(10) Pub. No.: US 2008/0041852 A1

(43) Pub. Date:     Feb. 21, 2008

(54) VACUUM GENERATING DEVICE FOR
SEALING PERISHABLE PRODUCTS AND
METHOD OF USE

(75) Inventor:     Edward Z. Cai, Camas, WA (US)

Correspondence Address:
Edward Z. Cai
4607 SE Autumn CT
Camas, WA 98607

(21) Appl. No.:     11/499,280

(22) Filed:     Aug. 5, 2006

Publication Classification

(51) Int. Cl.
B65D 51/16     (2006.01)
B65D 41/04     (2006.01)

(52) U.S. Cl. ...................... 220/231; 220/806

(57)                 ABSTRACT

A vacuum sealing device comprises a lid having a rigid rim with a lower opening for receiving a dish, an impermeable elastic membrane peripherally affixed to the rigid rim for sealing the dish, and a valve-less air evacuator formed between the elastic membrane and the dish rim. The valve-less evacuator allows air to flow out of the dish when the lid is being pressed and becomes closed when the lid is released to cause said lid to rebound to form a vacuum in the dish. The rigid rim prevents lid deformation when the lid is pressed, thus enabling the vacuum formation. To facilitate lid removal, the device has a valve-less vacuum releaser comprising a finger-receiving chamber and a section of the elastic membrane located above the chamber and connected to the rigid rim for releasing the vacuum in the dish. To prevent vacuum loss during storage in freezer or fridge, the elastic membrane is sufficiently thinned prior to being affixed to the rigid rim. In use, one places the lid on a dish, forces air out of the dish via the air evacuator between a section of the elastic membrane and the dish rim by pressing the lid, and releases the lid to cause the air evacuator to close and vacuum to form in the dish. To restore the device's capability to generate and maintain vacuum after numerous uses, the lid is exposed to a hot fluid having a temperature higher than 45° C. for a period of time.



**EXHIBIT "B"**

# VENABLE

Roger A. Colaizzi                          202-344-8051                          rcolaizzi@venable.com

May 15, 2008

Michael Sobo, President
SAS Group, Inc.
200 White Plains Road
Tarrytown, New York 10591

Dear Mr. Sobo:

We represent Leetent L.L.C. ("Leetent") of Vancouver, Washington for protecting its intellectual property rights on Keepeez™ products. Our client has two U.S. patent applications, two corresponding PCT applications, and many foreign applications by its principal, Dr. Edward Z. Cai. The two U.S. patent applications are:

1.    Patent Application Serial No. 10/0917,016 published February 16, 2006, Publication No. US2006/0032852 A1; and

2.    Patent Application Serial No. 11,499,280 published February 21, 2008, Publication No. US2008/0041852 A1.

Copies of these applications are enclosed. Section 154(d) of the U.S. Code-Patents gives our client the right to obtain a royalty from any person who, after publication of these patents and with actual notice of the published applications, makes, uses, offers for sale, or sells in the U.S., or imports into the U.S., an invention as claimed in the published patent application, if the invention as claimed in the resulting patent is substantially identical to the invention claimed in the published application. See 35 U.S.C. § 154(d). We expect the first patent to be issued in several months.

As you can see, the SMART LIDZ product falls within the published claims of the enclosed applications.

Please be advised that our client intends to pursue all possible remedies and take all necessary action to protect their intellectual property. This action would include seeking damages caused by the manufacture, advertisement, distribution, offer to sell, and sale of any products infringing issued patents, including with respect to provisional rights. Indeed, in addition to claims for patent infringement, our client would seek all other available causes of action, which may include false advertising claims under the Lanham Act.

Very truly yours,

Roger A. Colaizzi

Enclosures

# VENABLE

May 15, 2008
Page 2


cc:     Edward Z. Cai, President
        Rick Van Abkoude, Executive VP